LAWRENCE C. HERSH
Attorney at Law
17 Sylvan Street, Suite 102B
Rutherford, NJ 07070
(201) 507-6300
lh@hershlegal.com

Daniel J. Marovitch (subject to *pro hac vice* admission)
MAROVITCH LAW FIRM, LLC
205 N. Michigan Ave., Suite 810
Chicago, IL 60601
Telephone: (312) 533-1605
dmarovitch@marovitchlaw.com

Larry P. Smith (subject to *pro hac vice* admission)
SMITHMARCO, P.C.
400 Lake Cook Rd., Suite 203
Deerfield, IL 60015
Telephone: (888) 915-0836
lsmith@smithmarco.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRADLEY T. HACKETT, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>B.C.T. IMPORTS, INC. and BOB CIASULLI AUTO GROUP, INC.,<br><br>Defendants. | Case No. _______________<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1. "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 613 (2020).

2. Defendants B.C.T. Imports, Inc. and Bob Ciasulli Auto Group, Inc. ("Defendants") have made multiple prerecorded-voice and text calls to Plaintiff Bradley T. Hackett's ("Plaintiff") personal cell phone number, for the purpose of encouraging the purchase of their vehicle maintenance goods and services. Defendants' calls are unsolicited telemarketing: Plaintiff has no relationship with Defendants, and he never asked for these telephone communications. Indeed, Plaintiff registered his phone number with the National Do Not Call Registry years prior to receiving Defendants' telephone communications, and Defendants' calls continue despite repeated requests to stop.

3. The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits initiating any prerecorded- or artificial-voice call (i.e., a "robocall") to a cell phone number or residential line, in addition to prohibiting telephone solicitations to a residential telephone subscriber who registered their phone number with the National Do Not Call Registry, and telemarketing after a do-not-call request.

4. Given the automated nature of robocall violations, and the cost of litigation as compared with individual recoveries, a class action is the only practicable means of obtaining redress for Defendants' illegal telecommunications, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

5. Accordingly, Plaintiff brings this class action complaint against Defendants, to secure money damages and injunctive relief on behalf of himself and others for Defendants' violations of the TCPA.

## INTRODUCTION

6. In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and that many consumers were "outraged" by the proliferation of such calls. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citation omitted).

7. The TCPA prohibits, among other things, "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any … artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[,]" with a similar prohibition against nonconsensual, artificial or prerecorded-voice telemarketing to residential lines. 47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(B); 47 C.F.R. § 64.1200(a)(1)(iii), (a)(2), (a)(3).

8. The TCPA provides for injunctive relief and the greater of actual damages or $500 per robocall violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(b)(3).

9. The TCPA also prohibits "initiat[ing] any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government"—i.e., the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

10. The TCPA further prohibits initiating "any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity[,]" which satisfy certain minimum standards. 47 C.F.R. § 64.1200(d).

11. In the event a person receives more than one telephone call within any 12-month

period by or on behalf of the same entity in violation of the TCPA's do-not-call rules, the TCPA provides for injunctive relief and the greater of actual damages or up to $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(c)(5).

**PARTIES**

12. Plaintiff Bradley T. Hackett is a natural person who resides in, and is a citizen of, Lee County, Florida. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

13. The phone number at which Plaintiff received the calls and text messages at issue is assigned to a cellular service, for which Plaintiff is the subscriber and sole user personally. His cellular plan is a personal plan.

14. Plaintiff is a residential telephone subscriber.

15. Plaintiff does not use another residential phone beyond his cell phone; he carries it with him at virtually all times. Plaintiff received the calls and text messages at issue largely (if not entirely) while he was at home, too; in fact, one of Defendants' text messages to Plaintiff – at approximately 7:11 a.m. on September 12, 2026 – woke him up while he was in bed.

16. B.C.T. Imports, Inc. ("BCT"), doing business as Toyota Universe, is a for-profit New Jersey corporation, headquartered at 1485 Route 46 East, Little Falls, New Jersey 07424. Defendant BCT is domiciled in, and a citizen of, New Jersey. BCT is a "person" as defined by 47 U.S.C. § 153(39).

17. Bob Ciasulli Auto Group, Inc. ("Ciasulli Auto") is a for-profit New Jersey corporation, headquartered at 1485 Route 46 East, Little Falls, New Jersey 07424. Defendant Ciasulli Auto is domiciled in, and a citizen of, New Jersey. Ciasulli Auto is a "person" as defined by 47 U.S.C. § 153(39).

18. Defendants are corporate affiliates under common ownership by Robert G. Ciasulli.

19. Other Ciasulli Auto dealerships include M.T. Imports, Inc. d/b/a Galaxy Toyota, Mack Auto Imports d/b/a Honda of Toms River, Route 88 Vehicle Corp. d/b/a Honda Universe, United Galaxy, Inc. d/b/a Tri-County Lexis, and Universal Global Inc. d/b/a Metro Honda.

20. Ciasulli Auto oversees and directs the operations of BCT and its other affiliated dealerships – essentially functioning as head management for the collective family of companies, including as to marketing.

21. On information and belief, Defendants – operating out of their shared location in Little Falls, New Jersey – coordinated to jointly cause the telephone communications at issue in this matter to be made, and benefitted monetarily therefrom.

**JURISDICTION AND VENUE**

22. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under a federal statute, the TCPA.

23. The Court has personal jurisdiction over Defendants and venue is proper in this District under 28 U.S.C. § 1391(b), because Defendants reside in this District and a substantial part of their wrongful conduct giving rise to this action occurred here. Plaintiff incurred the call violations at issue from action arising from this District, and Defendants orchestrated and made the illegal calling at issue to Plaintiff and others from their location in this District.

**FACTS**

24. Defendant BCT is an auto dealership that, as a member of the Ciasulli Auto family of companies, engages in telemarketing to support Defendants' business.

25. Plaintiff registered his cell phone number with the National Do Not Call Registry

on February 14, 2006.

26. Plaintiff has no relationship with Defendants, whether purchasing or transacting business with them, or inquiring or applying regarding products or services offered by them.

27. Plaintiff did not consent to or give permission for Defendants to call his phone number – whether via a text message, voice call, or otherwise.

28. Nevertheless, Defendants have made voice and text calls to Plaintiff's phone for the purpose of encouraging the purchase of their vehicle maintenance or other services.

29. For example, at approximately 11:41 a.m. on July 12, 2024, Defendants called Plaintiff's phone number from (973) 785-4710, and left the following voicemail message using a prerecorded voice, which included background music:

> … Monday through Friday from 9:00 to 9:00, and Saturday from 9:00 to 7:30. You can also visit our virtual showroom 24 hours a day at ToyotaUniverse.com. Let us know which vehicle you're interested in, and we'll arrange your test drive when we pick up your call in a moment.
>
> [pause]
>
> Toyota Universe has 1,000 vehicles in stock at all times. You'll find over 600 new Toyotas, as well as 400 pre-owned vehicles in stock. We have the car, truck, van, or sport utility for any need and every budget. Our finance team will work with lenders to get you approved regardless of your credit score. That's why here at Toyota Universe, we say that we finance our customers' future, not their past. Please let us know how we can best serve you when we pick up in just a moment, and while you're waiting, why not log on to ToyotaUniverse.com? Thanks for holding; we'll be right with you.
>
> [pause]
>
> Today's Toy….
>
> [abrupt speaker change to prerecorded message used in call at Paragraph 32]
>
> Hello, this Brianna at Toyota Universe. I have important information regarding the warranty on your Toyota. It is urgent you give me a call at (888) 484-0438. Again, that number is (888) 484-0438. Ask for Brianna, and have a great day.

30. At approximately 5:19 p.m. on July 15, 2024, Defendants called Plaintiff's phone number from (973) 785-4710, and left the following voicemail message using a prerecorded voice, which included background music:

> … ore. That's why here at Toyota Universe, we say that we finance our customers' future, not their past. Please let us know how we can best serve you when we pick up in just a moment, and while you're waiting, why not log on to ToyotaUniverse.com? Thanks for holding; we'll be right with you.
>
> [pause]
>
> Today's Toyotas are the best ever. They're more fuel efficient, yet more powerful. They're lighter, yet safer. And everyone agrees that they're the most beautiful cars, trucks, vans, and sport utility vehicles on the road today, and you'll get it all here at Toyota Universe. Why not stop by and test drive the Camry, and see why it's the best-selling car in America year after year? Need more room? Why not try the new Toyota Highlander on for size. It's a super fuel-efficient, rugged sport utility vehicle that's big on room, yet still easy to maneuver in tight spots. At Toyota Universe, we have the largest selection of new and certified Toyotas anywhere, so chances are you'll find the color and options you want, at a price you'll love. We look forward to your visit, in-person and online at ToyotaUniverse.com. Thank you for your patience; we'll pick up your call shortly.
>
> [pause]
>
> The service professionals at Toyota Universe want to keep your vehicle performing the same as the day it left our showroom. Our factory-trained technicians know your Toyota inside and out, and….

31. At approximately 2:51 p.m. on August 15, 2024, Defendants called Plaintiff's phone number from (973) 785-4710, and left the following voicemail message using a prerecorded voice, which included background music:

> We're on Route 46 East in Little Falls. Think of us as your neighbor, and stop by our showroom anytime. Our showroom hours are Monday through Friday from 9:00 to 9:00, and Saturday 9:00 to 7:30. Toyota Universe is the Tri-State's premier Toyota dealership, having won countless awards for our unmatched customer service. But the most important award of all is your repeat business. Let us know how to best serve you when we pick up in just a moment, or feel free to get the answers you need 24/7 at ToyotaUniverse.com.

[pause]

Here at Toyota Univ…

32. At approximately 12:36 p.m. on February 8, 2025, and 3:34 p.m. on April 8, 2025, Defendants called Plaintiff's phone number from (973) 785-4710, and left the following voicemail message using a prerecorded voice:

> Hello, this Brianna at Toyota Universe. I have important information regarding the warranty on your Toyota. It is urgent you give me a call at (888) 484-0438. Again, that number is (888) 484-0438. Ask for Brianna, and have a great day.

33. At approximately 7:47 p.m. on August 27, 2026, 6:18 p.m. on August 29, 2026, 6:24 p.m. on September 1, 2026, 5:39 p.m. on September 8, 2026, 9:59 a.m. on September 22, 2026, and 2:33 p.m. on September 25, 2026, Defendants called Plaintiff's cell phone from (973) 786-3824, and left the following voicemail message using a prerecorded voice:

> Hello, this is Maria with Toyota Universe. Thank you for being our valued customer. I have important information that could affect your vehicle's warranty. Please text me back or call me at (973) 785-4710, as I have your file in my hand, and I'm ready to speak to you. We look forward to assisting you, and thank you for your business.

34. Defendants' above calls are in addition to other voice calls they made to Plaintiff's phone – for example, that Plaintiff answered (e.g., at approximately 11:59 a.m. on August 11, 2026, and 6:14 p.m. on August 19, 2026) or that resulted in a static voicemail message (e.g., at approximately 10:12 a.m. on September 12, 2026) – which were also made for the purpose of encouraging the purchase of Defendants' vehicle maintenance or other services.

35. That Defendants' calls used a prerecorded voice is evident by the fact that the message, voice, inflection, and intonation used was identical across calls, and that several of them – e.g., the 2024 calls identified above – played what was clearly a recording on loop, as if the autodialer hadn't realized it was connected to voicemail and was waiting to connect Plaintiff

with a representative.

36. Defendants have also been sending text messages to Plaintiff's cell phone number, for the purpose of encouraging the purchase of their vehicle maintenance or other services.

37. For example, Defendants sent the following text call to Plaintiff's phone number at approximately 2:28 p.m. on August 15, 2024, from (201) 528-3310:




38. As another example, Defendants sent the following text call to Plaintiff's phone number at approximately 6:15 p.m. on August 19, 2026, as well as from "Mirely" at 5:40 p.m. on September 8, 2026, both from (973) 786-3824:




39. Defendants also sent the following text message to Plaintiff's cellular telephone number at approximately 9:36 a.m. on August 26, 2026, from (973) 786-3824:




40. Defendants sent the following text message to Plaintiff's cellular telephone number at approximately 6:19 p.m. on August 29, 2026, from (973) 786-3824:




41. Defendants also sent the following text message to Plaintiff's cellular telephone number at approximately 6:24 p.m. on September 1, 2026, from (973) 786-3824:




42. Defendants also made the following text call to Plaintiff's phone number at approximately 9:59 a.m. on September 22, 2026, from (973) 786-3824:




43. Defendants also made the following text call to Plaintiff's phone number at approximately 2:34 p.m. on September 25, 2026, from (973) 786-3824:




44. The purpose of each of Defendants' voice and text calls was the same: to encourage the purchase of Defendants' vehicle maintenance and other services.

45. "Toyota Universe" is a fictitious name for Defendant BCT that it registered with the New Jersey Department of the Treasury Division of Revenue and Enterprise Services, and which BCT regularly and publicly uses for its business.

46. The (973) 785-4710 phone number referenced in Defendants' communications to Plaintiff is BCT's phone number, which it advertises to the public.

47. Defendants made more violative voice and text calls to Plaintiff's phone number than those specifically listed herein, which are also part of this case; however, given their use of different phone numbers, and how long these violations have occurred and their volume, discovery is needed to identify the full extent of Defendants' improper communications to his phone number.

48. Defendants' telephone contact disrupted Plaintiff's life. They forced him to waste time dealing with Defendants' unwanted solicitations instead of conducting other activities, intruded on his desire to be left alone, and trespassed onto his phone.

49. Indeed, Plaintiff has tried repeatedly to get Defendants to stop calling his phone,

but Defendants continue to do so.

50. Among other things, Plaintiff texted "Stop" in response to their text messages at approximately 4:57 p.m. on August 30, 2024.

51. Plaintiff has also told Defendants to stop calling him during phone calls on multiple occasions, but Defendants continue to do so.

52. For example, during a spate of calls he was receiving from Defendants in 2025, Plaintiff answered, and told the woman on the other end of the line that he did not want to be contacted.

53. Despite Defendants' representative's assurance that the contacts would cease, Defendants called Plaintiff again a few days later, after which Plaintiff again answered and told the representative (a different woman) that he wanted the calls to stop.

54. Nonetheless, Defendants again called Plaintiff shortly thereafter. Plaintiff called back and asked to speak with a manager, who – after Plaintiff yet again expressed that he did not want to be contacted – told Plaintiff that he would ensure that Plaintiff's phone number was removed from their call list. Nonetheless, Defendants have continued to make voice and text calls to Plaintiff's phone.

55. Plaintiff has told Defendants not to call him on other occasions, as well, such as during calls on August 11, 2026, August 14, 2026, August 19, 2026, and September 25, 2026.

56. Defendants do not maintain procedures that meet minimum do-not-call standards, including, inter alia, maintaining a written do-not-call policy available upon demand, training personnel about the existence and use of a do-not-call list, and properly maintaining an internal do-not-call list to ensure that consumer do-not-call requests are actually honored. *See* 47 C.F.R. § 64.1200(d) (describing minimum standards).

57. Indeed, Defendants know that consumers receive unwanted calling from them despite a prior do-not-call request, but they continue doing so.

58. For example, Defendants received notice of the following consumer complaint and one-star rating on www.dealerrater.com:

**Toyota Universe**

★☆☆☆☆ *December 12, 2024*

***"If only Toyota universe could stop calling me non stop"***
*cdesa*

If only Toyota universe could stop calling me non stop about a transaction I made 10 years ago. The do not call list means nothing to them, they will annoy you and contact you non stop about useless things you don't need. Don't use this company unless you like spam calls for 10+ years after you've told the company a multitude of times to not ever contact you.

59. As another example, Defendants received the following complaint through the Better Business Bureau:

**Initial Complaint** **Type:** Customer Service Issues

**Date:** 08/05/2026 **Status:** Resolved

Toyota Universe in [redacted]. I keep receiving robo calls and voicemails from them from [redacted]. I have already put myself on the do not call list and asked them to remove me from their calling list. It has been at least 6 months. I have blocked them but they still leave voicemails. I do service at another dealer and I told them this yet they still call me.

60. Congress statutorily elevated the rights of individuals to be free from and legally protected against the types of calls which violate the TCPA, and Defendants have harmed Plaintiff and the other class members by invading this legally protected right.

61. The rights protected by the TCPA closely relate to rights enforceable at common law, including without limitation to the torts of intrusion upon seclusion and trespass to chattels.

62. Defendants' violations of the TCPA were willful and knowing.

63. The plain language of the TCPA is clear in prohibiting the voice and text calls Defendants sent to Plaintiff and the other class members.

64. Defendants know that prerecorded-voice telemarketing calls to third parties without consent, telephone solicitations to numbers on the National Do Not Call Registry, and telemarketing after a do-not-call request are illegal, yet they continue to engage in such.

65. Plaintiff and the other class members suffered harm as a result including, but not limited to, annoyance, nuisance, harassment, invasion of their respective privacy interests, waste of time, intrusion upon seclusion, and trespass or occupation of their respective telephones.

## CLASS ALLEGATIONS

66. Plaintiff brings this class action under Fed.R.Civ.P. 23(b)(2) and (b)(3), on behalf of the following classes:

> **Robocall Class:** All persons in the United States whose cell phone number or residential line Ciasulli Auto or BCT, or a third party on either of their behalf, called using an artificial or prerecorded voice.
>
> **DNC Registry Class:** All persons in the United States to whom Ciasulli Auto or BCT, or a third party on either of their behalf, initiated a voice or text call for the purpose of encouraging the purchase of a good or service, where: (1) the phone number contacted was registered with the National Do Not Call Registry, (2) the person had not purchased or transacted business with Defendants within the eighteen months before such contact, or inquired or applied regarding products or services offered by Defendants within the three months before such contact, without prior termination of the relationship, and (3) Defendants lacked a signed, written agreement with the consumer, stating that the person agrees to be contacted by Defendants at the subject phone number.
>
> **IDNC Class:** All residential telephone subscribers to whom Ciasulli Auto or BCT, or a third party on either of their behalf, initiated a voice or text call for the purpose of encouraging the purchase of a good or service, despite a prior do-not-call request.

67. The exact size of the classes is information within the exclusive knowledge of Defendants or their vendors, and Plaintiff reserves the right to modify these class definitions as he obtains relevant information, including call data, through discovery. However, on information

and belief, including based on the volume and automated and generic nature of the calling, each class contains hundreds of class members, such that joinder is impracticable.

68. Common questions of law or fact exist as to all members of each class, and predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the classes include but are not limited to:

a. Whether the calls to Plaintiff and the other Robocall Class members were made using an artificial or prerecorded voice, as such terms are defined or understood under the TCPA.

b. Whether Defendants can demonstrate that the violations were the result of error and that, as part of their routine business practice, they meet the National Do Not Call Registry standards set forth at 47 C.F.R. § 64.1200(c)(2)(i);

c. Whether Defendants can demonstrate that they instituted procedures for maintaining a list of persons who request not to receive their calls, which meet or exceed the minimum standards set forth in 47 C.F.R. § 64.1200(d).

d. Whether Defendants had valid consent, or prior express invitation or permission, under the TCPA to place the calls at issue;

e. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other class members are entitled to treble damages under 47 U.S.C. § 227(b)(3) and § 227(c)(5); and

f. Whether Defendants should be enjoined from such conduct in the future.

69. Plaintiff's claims are typical of the claims of the other members of the classes. The factual and legal bases of Defendants' liability to Plaintiff and the other members of the

classes are the same: Defendants violated the TCPA as to the Robocall Class by causing nonconsensual robocalls to be made to the telephone number of each class member, they violated the TCPA as to the DNC Registry Class by initiating telephone solicitations to class members' phone numbers on the National Do Not Call Registry, and they violated the TCPA as to the IDNC Class by initiating telemarketing calls to class members' phones without maintaining required do-not-call procedures, including honoring such persons' do-not-call requests.

70. Plaintiff will fairly and adequately protect the interests of the classes. Plaintiff has no interests that might conflict with the interests of the classes. Plaintiff is interested in pursuing his claims vigorously, and he has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

71. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

72. No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

73. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of each class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the classes, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the classes that

would establish incompatible standards of conduct.

74. The identities of class members can be readily ascertained through discovery from Defendants' or their vendors' records.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Robocall Class)**

75. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein. He brings this Count I on behalf of himself and the Robocall Class.

76. It is a violation of the TCPA to initiate any telemarketing call to a cellular telephone number or residential line using an artificial or prerecorded voice. 47 U.S.C. § 227(b)(1)(A)(iii), 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(2), (a)(3).

77. Defendants initiated or caused to be initiated calls to the phone numbers of Plaintiff and the other members of the Robocall Class using an artificial or prerecorded voice.

78. Defendants' calls were made for the purpose of encouraging the purchase of their vehicle maintenance or other services, and thus constituted telemarketing.

79. These calls were made without regard to whether or not Defendants had previously obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent (including prior express written consent) to call the phones of Plaintiff and the other members of the Robocall Class when the calls were made.

80. These calls were willful or knowing.

81. Defendants violated the TCPA by making non-emergency calls to the cell phone numbers or residential lines of Plaintiff and the other Robocall Class members using an artificial or prerecorded voice, without prior express consent.

82. To the extent that some of the calls to Plaintiff and the Robocall Class were made

by vendors of Defendants, Defendants are liable for those calls, too.

83. As a result of Defendants' conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the Robocall Class were harmed and are each entitled to a minimum of $500 in damages for each violation. Plaintiff and the Robocall Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(b)(3).

84. Because Defendants knew or should have known that Plaintiff and the other members of the Robocall Class had not given prior express consent to receive its robocalls—and/or willfully caused robocalls to be made to the phone numbers of Plaintiff and the other members of the Robocall Class without prior express consent—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the Robocall Class, pursuant to Section 227(b)(3) of the TCPA.

WHEREFORE, Plaintiff Bradley T. Hackett, individually and on behalf of the Robocall Class, respectfully requests that the Court enter judgment against Defendants for:

A. Certification of the Robocall Class as alleged herein;

B. Damages, pursuant to 47 U.S.C. § 227(b)(3);

C. Injunctive relief, pursuant to 47 U.S.C. § 227(b)(3), aimed at ensuring the prevention of Defendants from violating the TCPA in the future;

D. Attorneys' fees and costs, as permitted by law; and

E. Such other or further relief as the Court deems just and proper.

**<u>COUNT II</u>**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the DNC Registry Class)**

85. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein. Plaintiff brings this Count II on behalf of himself and the DNC Registry Class.

86. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered their telephone number on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

87. Defendants initiated or caused to be initiated voice and text calls to the phone numbers of Plaintiff and the other members of the DNC Registry Class, despite the fact that these residential telephone subscribers had registered their numbers on the National Do Not Call Registry.

88. Defendants' calls to Plaintiff and the other DNC Registry Class members were made without express invitation or permission or an established business relationship, for the purpose of encouraging the purchase of their auto maintenance or other services, and thus constituted telephone solicitations.

89. These calls were made without regard to whether or not Defendants had previously obtained prior express invitation or permission to make them. In fact, Defendants did not have prior express invitation or permission to contact the phones of Plaintiff and the other members of the DNC Registry Class when the calls and text messages were made.

90. These calls and text messages were willful or knowing.

91. Defendants violated the TCPA by initiating telephone solicitations to the residential telephone numbers of Plaintiff and the other DNC Registry Class members, despite their phone numbers having been registered with the National Do Not Call Registry.

92. To the extent that some of the calls and text messages to Plaintiff and the DNC Registry Class were made by vendors of Defendants, Defendants are liable for them, too.

93. As a result of Defendants' conduct and pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the other members of the DNC Registry Class were harmed and are each

entitled to up to $500 in damages for each violation. Plaintiff and the DNC Registry Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(c)(5).

94. Because Defendants knew or should have known that Plaintiff and the other members of the DNC Registry Class had registered their phone numbers with the National Do Not Call Registry when contacting them—and/or willfully caused telephone solicitations to be made to the phone numbers of Plaintiff and the other members of the DNC Registry Class regardless—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the DNC Registry Class, pursuant to Section 227(c)(5) of the TCPA.

WHEREFORE, Plaintiff Bradley T. Hackett, individually and on behalf of the DNC Registry Class, respectfully requests that the Court enter judgment against Defendants for:

A. Certification of the DNC Registry Class as alleged herein;
B. Damages, pursuant to 47 U.S.C. § 227(c)(5);
C. Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at ensuring the prevention of Defendants from violating the TCPA in the future;
D. Attorneys' fees and costs, as permitted by law; and
E. Such other or further relief as the Court deems just and proper.

**<u>COUNT III</u>**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the IDNC Class)**

95. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein. Plaintiff brings this Count III on behalf of himself and the IDNC Class.

96. The TCPA provides that "[n]o person or entity shall initiate … any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made

by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d).

97. Defendants have not instituted do-not-call list procedures that satisfy the minimum standards set forth in 47 C.F.R. § 64.1200(d), as is evident from their repeated inability to honor Plaintiff's multiple do-not-call requests.

98. On information and belief, Defendants lack a written do-not-call policy available upon demand, do not adequately train personnel on the existence and use of a do-not-call list, and do not properly maintain a do-not-call list to avoid telemarketing to consumers who request not to be called.

99. Defendants initiated or caused to be initiated voice and text calls to the phone numbers of Plaintiff and the other members of the IDNC Class, despite the fact that they had previously requested not to receive such calls.

100. Defendants' calls were made for the purpose of encouraging the purchase of their vehicle maintenance or other services, and thus constituted telemarketing.

101. These calls made were willfully or knowingly.

102. Defendants violated the TCPA by initiating telemarketing calls to Plaintiff and the other IDNC Class members, despite their prior do-not-call request.

103. To the extent that some of the calls to Plaintiff and the IDNC Class were made by a vendor of Defendants, Defendants are liable for them, too.

104. As a result of Defendants' conduct and pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the other members of the IDNC Class were harmed and are each entitled to up to $500 in damages for each violation. Plaintiff and the IDNC Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(c)(5).

105. Because Defendants knew or should have known that Plaintiff and the other

members of the IDNC Class had previously requested not to be called when calling them — and/or willfully caused telemarketing calls to be made to Plaintiff and the other members of the IDNC Class regardless—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the IDNC Class, pursuant to Section 227(c)(5) of the TCPA.

WHEREFORE, Plaintiff Bradley T. Hackett, individually and on behalf of the IDNC Class, respectfully requests that the Court enter judgment against Defendants for:

A. Certification of the IDNC Class as alleged herein;

B. Damages, pursuant to 47 U.S.C. § 227(c)(5);

C. Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at ensuring the prevention of Defendants from violating the TCPA in the future;

D. Attorneys' fees and costs, as permitted by law; and

E. Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

## PRESERVATION DEMAND

Plaintiff hereby demands that Defendants take affirmative steps to preserve all telephone recordings, data, emails, other recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, Plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, telemarketing, account, sale or file associated with Plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of Defendants.

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

I, Lawrence C. Hersh, the undersigned attorney of record for Plaintiff, do hereby certify to my own knowledge and based upon information available to me at my office, the matter in controversy is not the subject of any other action now pending in any court or in any arbitration or administrative proceeding.

Dated: October 20, 2026

Respectfully submitted,

By: */s/ Lawrence C. Hersh*

Lawrence C. Hersh
ATTORNEY AT LAW
17 Sylvan Street, Suite 102B
Rutherford, NJ 07070
Telephone: (201) 507-6300
lh@hershlegal.com

Daniel J. Marovitch
(subject to *pro hac vice* admission)
MAROVITCH LAW FIRM, LLC
205 N. Michigan Ave., Suite 810
Chicago, IL 60601
Telephone: (312) 533-1605
dmarovitch@marovitchlaw.com

Larry P. Smith
(subject to *pro hac vice* admission)
SMITHMARCO, P.C.
400 Lake Cook Rd., Suite 203
Deerfield, IL 60015
Telephone: (888) 915-0836
lsmith@smithmarco.com

*Counsel for Plaintiff*